WARD, KEENAN & BARRETT, P.C.
Gerald Barrett, SBN 5855
2141 East Camelback Rd. Suite 100
Phoenix, Arizona 85016
gbarrett@wardkeenanbarrett.com
Telephone: (602) 279-1717
Facsimile: (602) 279-8908

FEINSTEIN DOYLE PAYNE
   & KRAVEC, LLC
William T. Payne
Pamina Ewing
Joel R. Hurt
Ruairi McDonnell
429 Fourth Avenue
Law & Finance Building, Suite 1300
Pittsburgh, Pennsylvania 15219
Telephone: (412) 281-8400

*Attorneys for Plaintiffs*

David R. Jury, General Counsel
Mariana Padias, Assistant General Counsel
Maneesh Sharma, Assistant General Counsel
United Steelworkers
60 Boulevard of the Allies, Room 807
Pittsburgh, Pennsylvania 15222
Telephone: (412) 562-2549

*Attorneys for Plaintiff United Steelworkers*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Arnold Contreras; Tony M. Meza; Charles M. Estrada; and Celestino W. Flores, on behalf of themselves and all other persons similarly situated; and United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO/CLC,<br><br>Plaintiffs,<br><br>v.<br><br>ASARCO LLC; and ASARCO, LLC Union Employee Benefits Plan,<br><br>Defendants. | Case No.:<br><br>JURY TRIAL DEMANDED<br><br>CLASS ACTION |

# CLASS ACTION COMPLAINT

## I.   INTRODUCTION

1. This action is brought by Plaintiffs Arnold Contreras, Tony M. Meza, Charles M. Estrada, and Celestino W. Flores ("Class Representatives"), on behalf of themselves and a class of similarly-situated retirees ("Retirees") and their eligible spouses, dependents and surviving spouses (collectively, "Class Members") pursuant to Rule 23 of the Federal Rules of Civil Procedure, and by the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO/CLC ("USW") which, together with predecessor unions, was the collective bargaining representative for certain employees of Defendant ASARCO LLC ("ASARCO") and its predecessor companies. Plaintiffs proceed against ASARCO and Defendant ASARCO, LLC Union Employee Benefits Plan ("Health Plan"), and aver as follows:

2. ASARCO has communicated that effective either April 1, 2019 or May 1, 2019, it will unilaterally eliminate retiree health care benefits it provides to Medicare-eligible Class Members. ASARCO will replace the comprehensive medical and prescription drug benefits it contracted to provide with limited funds conveyed through a so-called "healthcare reimbursement arrangement."

3. ASARCO's right to terminate retiree healthcare benefits has already been considered by this Court in the related case of *ASARCO Incorporated v. United Steelworkers of America, AFL-CIO-CLC*, No. CV 03-1297-PHX-FJM (Martone, J.) ("First ASARCO Retiree Healthcare Action"). Judge Martone exhaustively reviewed many of the governing contracts and other pertinent evidence in the context of the first ASARCO proceeding.

4. Like this case, the First ASARCO Retiree Healthcare Action concerned the collectively bargained rights to retiree healthcare benefits of certain retired ASARCO employees. As identified by Judge Martone in his July 26, 2005 Order denying

ASARCO's summary judgment motion ("2005 Summary Judgment Ruling") (attached hereto as Exhibit A), "[t]he issue is whether the Collective Bargaining Agreements (CBAs) and governing Medical Plan documents prohibit ASARCO, in perpetuity, from modifying, amending, or terminating medical benefits…" 2005 Summary Judgment Ruling at 2.

5.  The First ASARCO Retiree Healthcare Action was settled pursuant to a 2007 Settlement Agreement, attached hereto as Exhibit B.  The 2007 Settlement Agreement expressly gives the USW, as well as the First ASARCO Retiree Healthcare Action class representatives and class members, "the right to file new litigation in a court having jurisdiction and venue over the matter (including the United States District Court in Arizona)." 2007 Settlement Agreement at 15.

6.  Despite the fact that the 2007 Settlement Agreement gives the USW and the original class representatives and class members the right to file new litigation in the court of their choice, and despite the fact that many of the issues and much of the evidence in this case have already been reviewed by Judge Martone, ASARCO on October 23, 2018 filed a preemptive (and piecemeal) declaratory judgment action in the Northern District of Texas, Dallas Division.

7.  ASARCO elected to file suit in Texas even though it is headquartered in Tucson, most Class Members reside in Arizona, most of the facilities where Retirees worked are located in Arizona, and virtually all of the material witnesses reside in Arizona.  Further, it was ASARCO that selected the District of Arizona as the forum for the First ASARCO Retiree Healthcare Action.  Indeed, in justifying its original choice of Arizona as the proper forum, ASARCO averred in its Arizona complaint that "[m]ore ASARCO Retirees who had previously worked under the Collective Bargaining Agreements live in Arizona than in any other state."

8.  A document provided by ASARCO representatives on October 22, 2018 shows that three of the four "Metro Areas" containing the most retirees subject to

- 3 -

ASARCO's Medicare-eligible benefit elimination are in Arizona. The document states that 207 retirees reside in the Phoenix-Mesa-Scottsdale area, 136 Retirees reside in the Tucson area, and 98 retirees reside in an "Arizona Nonmetropolitan Area." ASARCO representatives explained that these totals do **not** include non-retirees, meaning that the total number of Arizona Class Members is substantially larger than is indicated by the ASARCO document. The document identifies 125 retirees in the Amarillo, Texas area; according to Google Maps, Amarillo is a 366-mile drive from Dallas, where ASARCO filed its preemptive suit.

9. The case concerns retiree healthcare benefits for Medicare-eligible Class Members. Retirees earned the right to these retiree health care benefits throughout their lifetimes through decades of employment. These rights were created through collective bargaining between ASARCO and USW (and its predecessor unions), as well as other unions, which represented Retirees before they retired. Hereinafter, all references to "ASARCO" and "USW" will include their predecessors.

10. Successive collectively bargained agreements between ASARCO and USW, including the 2007 Settlement Agreement, contained provisions which established ASARCO's obligation to provide retiree health care benefits to Medicare-eligible Class Members throughout their lives. Now retired, Retirees rely on this right to receive retiree health care benefits throughout their lifetimes for their health care needs. As averred, despite these contract provisions, as well as other promises to provide lifetime benefits to Class Members, ASARCO has now announced its intention to unilaterally eliminate the retiree health care benefits it provides to Class Members effective April 1 or May 1, 2019.

11. Since Class Members' retiree medical benefits were the result of bargaining between labor organizations and an employer, ASARCO's actions are actionable in this Court under Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a). Defendants' conduct also violates Class Members' rights under one or more

1 employee benefit plans, and is therefore actionable in this Court under Sections 502(a)(1)(B) and 502(a)(3) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1132(a)(1)(B) and (a)(3).

## II.   JURISDICTION AND VENUE

12.   As both Counts raise federal questions, this Court has jurisdiction over them under 28 U.S.C. § 1331.  This Court also has jurisdiction over Count I under LMRA § 301, 29 U.S.C. § 185, and over Count II under ERISA §§ 502(e)(1) and (f), 29 U.S.C. §§ 1132(e)(1) and (f).  Venue in this judicial district is proper under LMRA § 301, 29 U.S.C. § 185, and ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2).

## III.   PARTIES

13.   Plaintiff Arnold Contreras is an adult resident of Dudleyville, Arizona.  Mr. Contreras worked for ASARCO at the Hayden Concentrator in Hayden, Arizona.  He worked for ASARCO from 1965 until he retired in 2005, and was a member of the USW bargaining unit during his employment.  Mr. Contreras turned 65 in 2008 and is now 75 years old.  He has received the retiree health care benefits provided to Medicare-eligible Class Members from the Health Plan since he turned 65.

14.   Plaintiff Tony M. Meza is an adult resident of Kearny, Arizona.  Mr. Meza worked for ASARCO at the Hayden Smelter in Hayden, Arizona.  He worked for ASARCO from 1989 until he retired in 2009, and was a member of the USW bargaining unit during his employment.  Mr. Meza turned 65 in 2015 and is now 67 years old.  He has received the retiree health care benefits provided to Medicare-eligible Class Members from the Health Plan since he turned 65.

15.   Plaintiff Charles M. Estrada is an adult resident of Coolidge, Arizona.  Mr. Estrada worked for ASARCO at Ray Mine in Kearny, Arizona.  He worked for ASARCO from 1974 until he retired in 2011, and was a member of the USW bargaining unit during his employment.  Mr. Estrada is now 62 years old and will turn 65 in 2021.

16. Plaintiff Celestino W. Flores is an adult resident of Kearny, Arizona. Mr. Flores worked for ASARCO at Ray Mine in Kearny, Arizona. He worked for ASARCO from 1978 until he retired in 2015, and was a member of the USW bargaining unit during his employment. Mr. Flores retired sooner than he would have otherwise done so in order to lock in his lifetime retiree health benefits. He is now 58 years old and will turn 65 in 2025.

17. Plaintiff USW is a labor organization headquartered in Pittsburgh, Pennsylvania and employs personnel in Arizona, where it serves as an exclusive bargaining representative for numerous units of employees. USW was known for decades as the United Steelworkers of America, AFL-CIO/CLC, before it changed its name in 2005 to United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO/CLC. For several decades, the USW or its predecessor unions, have negotiated CBAs with ASARCO relating to, *inter alia*, retiree health care benefits for hourly ASARCO employees.

18. ASARCO LLC is a mining, smelting, and refining company based in Tucson, Arizona, and a wholly-owned subsidiary of Grupo México. ASARCO's website identifies its address as 5285 E. Williams Circle, Suite 2000, Tucson, AZ 85711-7711. ASARCO's website also states that it has three copper mines, one copper smelter, and two solvent extraction and electrowinning plants in Arizona, and that its administrative offices also are in Arizona. See http://www.asarco.com/about-us/. The cited webpage identifies one copper refinery – and no other presence – within the state of Texas.

19. ASARCO is qualified and registered to do business in Arizona and has such extensive contacts within this judicial district that it "may be found" in this district within the meaning of 29 U.S.C. § 1132(e)(2).

20. ASARCO is an employer engaged in commerce and is sued in its capacities as employer, plan sponsor and fiduciary.

21. Defendant Health Plan is an "employee benefit plan" within the meaning of ERISA. ASARCO is the plan sponsor and administrator of the Health Plan, and is also a named fiduciary as defined in 29 U.S.C. § 1102(a).

### IV.   STATEMENT OF FACTS

22. In November 1986, ASARCO purchased from the Kennecott Corporation the Ray Mine and Hayden Concentrator, both located in Arizona and collectively referred to as the "Ray Unit." The USW participated in negotiations for the pertinent Kennecott contracts.

23. Before the 1986 sale, retiree healthcare benefits for Ray Unit retirees were considered lifetime benefits.

24. ASARCO adopted Kennecott's retiree healthcare obligations when it purchased the Ray Unit.

25. On July 9, 2003, various ASARCO entities and related parties commenced a declaratory judgment putative class action against the USW, other unions, and several retirees as representatives of a defendant class, suing in this Court. A copy of ASARCO's 2003 Complaint is attached hereto as Exhibit C.

26. ASARCO sought a declaration that modifications it had made to retiree healthcare benefits did not violate the governing labor agreements, the LMRA or ERISA, alleging that it had the right to modify its retiree healthcare plans by increasing premiums, deductibles, and co-payments.

27. The defendant unions and retirees filed a counterclaim, alleging that ASARCO violated the governing labor agreements, the LMRA and ERISA when it instituted cost-shifting.

28. The First ASARCO Retiree Healthcare Action addressed the retiree medical benefits of two subclasses, Subclasses A and B. Subclass A consisted of non-Ray Unit retirees (and their beneficiaries) and concerned pre-Medicare retiree healthcare benefits. Subclass B consisted of the Ray Unit retirees (and their beneficiaries) and

1 concerned whether their retiree medical benefits continued beyond Medicare eligibility for life.

29. The First ASARCO Retiree Healthcare Action included 159 docket entries. Following discovery and extensive additional proceedings, ASARCO moved for summary judgment, which Judge Martone denied in his 2005 Summary Judgment Ruling.

30. Shortly thereafter, ASARCO on August 18, 2005 filed a notice of filing of bankruptcy, and the case was ultimately transferred to the United States Bankruptcy Court for the Southern District of Texas ("Bankruptcy Court"). In its November 2, 2005 transfer order (Dkt #156) (Exhibit D hereto), Judge Martone observed that " …this action is fully litigated and ready for trial" and that "[t]his court's order denying summary judgment is law of the case and thus will be binding on the parties."

31. After the case was transferred to the Bankruptcy Court, the parties (including the USW and other unions) entered into the 2007 Settlement Agreement. The express purpose of the 2007 Settlement Agreement was to resolve the transferred litigation which had been pending in this District, *i.e.*, the First ASARCO Retiree Healthcare Action. See 2007 Settlement Agreement at 1.

32. The parties highlighted in the 2007 Settlement Agreement that "[i]n its transfer order, the Arizona District Court observed that its order denying summary judgment was the law of the case and binding on the parties." 2007 Settlement Agreement at 5.

33. Pursuant to the 2007 Settlement Agreement, ASARCO provides the First ASARCO Retiree Healthcare Action class members with company-provided retiree healthcare benefits as described therein and in specified additional documents. Exhibit B at 12-13. Medicare-eligible class members pay a monthly premium of $75 per participant for these benefits, and the total monthly premium for a family may not exceed $150. *Id.*

34. As to "Duration of Obligation to Provide Reinstated Plan," the 2007 Settlement Agreement provides:

> ASARCO will provide the benefits described above and shall provide those benefits during the term of the Collective Bargaining Agreement between ASARCO and some of the Unions dated January 1, 2007.  This Settlement Agreement is without prejudice to the right of the Unions and the Class Members to challenge any modification to or termination of retiree benefits that may occur during or after the term of the Collective Bargaining Agreement between ASARCO and some of the Unions dated January 1, 2007, described above, during which benefits are provided pursuant to this Settlement Agreement.  **If ASARCO modifies or terminates benefits after the expiration of the Collective Bargaining Agreement between ASARCO and some of the Unions dated January 1, 2007, described above, during which benefits are provided pursuant to this Settlement Agreement, the parties to this agreement will have the right to challenge the modification or termination and will retain all the legal arguments that they asserted, or could have asserted, in this litigation**.  For example, ASARCO could continue to assert that under the terms of the terms of the collective bargaining agreements and Plans, it can reduce or eliminate retiree medical benefits after expiration of collective bargaining agreements, and the Unions and Class Members could continue to assert that ASARCO has an obligation to provide these benefits throughout retirement, subject only to termination for certain groups of individuals when they became eligible for Medicare.  **The Unions, Class Representatives and Class Members would all have the right to file new litigation in a court having jurisdiction and venue over the matter (including the United States District Court in Arizona), and in such litigation the parties shall be able to make full use of depositions, documents and other materials produced during the Arizona Litigation.**  Similarly, ASARCO will not have waived any of the arguments advanced by it in the Arizona Litigation or any other arguments otherwise available to it in law or equity.

2007 Settlement Agreement at 14-15 (emphasis added).

35. The 2007 Settlement Agreement also provides that "a participant's eligibility for coverage under the program after obtaining Medicare eligibility will be determined based on the rules of the plan in effect at the time of the retiree's date of retirement." 2007 Settlement Agreement at 13.

36. The parties (including the USW as well as other unions) also entered into a collective bargaining agreement effective January 1, 2007 ("2007 BLA") (Exhibit E hereto).  The 2007 BLA in pertinent part provides:

> Employees who retire (other than deferred vested) under the Asarco Retirement Income Plan for Hourly-Rated Employees will continue to be covered by the Asarco Health Plan (including prescription drug benefits) and Group Life Insurance Plan, including spouse and eligible dependents as long as they remain eligible, as described in Section O of this Article.

2007 BLA at 105.

37. Section O in pertinent part provides.

> Effective January 1, 2007 ("Effective Date"), the Company will maintain its program of Medical, prescription drug and life insurance benefits ("Program") for retirees (and their spouses and surviving spouses) who, by reason of any collectively bargained agreement between the Union and the Company (or any one of its predecessors or direct or indirect subsidiaries) were eligible for retiree insurance benefits as of the Effective Date or who retire from the Company on or after the Effective date with eligibility for retiree insurance coverage ("Participants"), subject to the modifications to the Program as outlined herein.
>
> Benefit Plans
>
> ***
>
> Effective March 1, 2007:
>
> (1) The Program for Participants not eligible for Medicare will be the same medical and prescription drug coverage (excluding premiums) as outlined in the June 30, 2002 Settlement Agreement between the Unions and the Company for active employees at Asarco's Ray Operations.
>
> (2) The Program for Participants age 65 and over or who are eligible for Medicare will be the same medical and prescription drug coverage (excluding premiums) as provided to non-Medicare eligible Participants (coordinated with Medicare).
>
> ***

>  (4) Notwithstanding the above, a Participant's eligibility for coverage under the Program after obtaining Medicare eligibility will be determined based on the rules of the Plan in effect at the time of the retiree's date of retirement.
>
> Beneficiary Premiums
>
> Participant premiums for all Participants covered by this Program will be as follows….
>
> b. Post Medicare:
>
>  $75 per participant (each retiree, spouse, or surviving spouse)
>  $150 maximum per family per month

2007 BLA at 116.

38. The 2007 BLA also states:

> The terms of Sections B through N shall control over any provisions of the summary plan descriptions or booklets distributed by the Company or plan administrators ("SPD's") that address such matters. **Notwithstanding any language to the contrary in those SPD's, the benefits or covered services described therein shall not be subject to amendment, modification or termination except as the Union and the Company agree otherwise (except as necessary to comply with applicable law).**

2007 BLA at 101 (emphasis added).

39. The 2007 BLA thus provides Medicare-eligible retiree healthcare benefits to those retiring under that agreement, as well as to their eligible spouses, dependents and surviving spouses, and these benefits are not subject to modification or termination unless the USW (and other pertinent unions) and ASARCO so agree.

40. On February 9, 2010, the parties negotiated a memorandum of agreement extending the 2007 BLA to June 30, 2011.

41. On June 24, 2011, the parties entered into another memorandum of agreement extending the 2007 BLA to June 30, 2013.

42. On June 28, 2013, the parties entered an extension agreement which provided by its terms that the amended 2007 BLA would continue in full force and effect until the expiration of a fifteen-day period following notice of termination by any party.

43. While both parties gave that notice on June 5, 2015, employees continued to work under the terms and conditions of the 2007 BLA until ASARCO unilaterally implemented new terms and conditions of employment on December 1, 2015. Pursuant to said unilaterally implemented terms and conditions of employment, as long as they had submitted the necessary paperwork prior to December 1, 2015, retirement-eligible employees had an additional 180 days to leave their employment and begin receiving retiree benefits.

44. The USW has never agreed to any unilateral benefit termination by ASARCO, whether in the announced form described below, or in any other form.

45. By letter dated October 10, 2018, counsel for ASARCO advised some of counsel for Plaintiffs that ASARCO was "proposing" to alter the medical and prescription drug benefits for ASARCO Medicare-eligible retirees and dependents "effective April 1, 2019." ASARCO's letter specifically cited both pre-2007 and post-2007 Medicare-eligible retirees as subject to the benefit termination.

46. On October 22, 2018, various ASARCO representatives, including counsel, met with some of the counsel for Plaintiffs and USW representatives in Pittsburgh. At that meeting, ASARCO representatives explained aspects of the "healthcare reimbursement arrangement" ASARCO had proposed imposing on Class Members, promised to provide census information and other data, and suggested that if the parties eventually reached a mutually satisfactory agreement as to a substitute plan, there could be a judicial process for approving that plan. At no time did ASARCO representatives hint that any lawsuit in which they would sue their own retirees was imminent. Nor has ASARCO provided the promised census information, which would disclose the state of residence of all Class Members.

47. Without furnishing any prior notice to the USW representatives and Plaintiffs' counsel with whom its representatives had met the day before, ASARCO on October 23, 2018 filed a preemptive declaratory judgment class putative class action against the USW, other unions, and one its own retirees in the United States District Court for the Northern District of Texas.

48. ASARCO asks the Texas court to declare that it has the right to modify or terminate medical and prescription drug benefits it provides to certain of its Medicare-eligible retirees and their beneficiaries.

49. A summary plan description "effective May 1, 2019" ("2019 SPD") attached to ASARCO's Texas complaint reflects that ASARCO will cease providing its "Medicare eligible retirees and their eligible dependents" with company-provided benefits effective May 1, 2019.  The 2019 SPD is not limited in application to the subset of retirees that ASARCO names as its putative defendant class in the Texas complaint.

50. Notwithstanding that both its 2019 SPD and October 10, 2018 letter to counsel make clear that ASARCO intends to terminate company-provided healthcare benefits for **all** Medicare-eligible retirees, ASARCO's Texas complaint cherry-picks certain of its Medicare-eligible retirees for its declaratory judgment action.  By so limiting its suit, ASARCO engages in piecemeal litigation which cannot fully resolve the outstanding dispute as to ASARCO's right to terminate benefits for all affected retirees and their beneficiaries.

51. The coverages identified in the 2019 SPD are inferior to the contractual post-Medicare retiree health care benefits Class Members had been receiving and are entitled to receive for their lifetimes, particularly as to those Class Members who are the sickest and therefore the greatest utilizers of medical care and prescription drug benefits.

52. ASARCO has taken the position that it can terminate even its newly announced limited benefit at any time, asserting in its 2019 SPD that "it has the right to

modify or terminate the program at any time for any reason…", including a right "to reduce or eliminate the amount credited to HRA in the future."

53. All Class Members are burdened by the unilateral imposition of reduced benefits.

54. Defendants are jointly and severally liable for the obligations arising under the collectively bargained agreements to provide retirees health care benefits at the levels specified in the agreements.

55. By unilaterally reducing retiree health care benefits and taking the position that they can terminate coverage for all Class Members, Defendants breached their obligations to Plaintiffs and to Class Members.

## V.   CLASS ACTION ALLEGATIONS

56. Class Representatives bring this action on behalf of themselves and a class consisting of all former ASARCO employees who received and/or were eligible to receive Medicare-eligible medical benefits (and their eligible spouses, dependents and surviving spouses). Retiree class members either retired before November 30, 2015 or provided the requisite retirement notice by November 30, 2015 and then retired within 180 days of providing that notice.

57. The number of Class Members exceeds several hundred, is large enough that joinder of individual members in this action is impracticable.

58. There are common questions of law and fact that relate to and affect Class Members -- namely, whether Medicare-eligible retiree health care benefits were meant to last, unaltered, for Class Members' lifetimes, as set forth in more detail below in Counts I and II of this Complaint.

59. The relief sought is common to all Class Members as set forth below in the section titled, "Relief Requested."

60. The claims of the Class Representatives are typical of the claims of all Class Members, namely that Defendants are obligated under LMRA § 301 and ERISA to

provide them with retiree health care benefits, as provided under collectively bargained agreements between ASARCO and the USW, and that Defendants could not unilaterally reduce these benefits. There is no conflict between the Class Representatives and any other Class Member with respect to this action.

61. The Class Representatives will fairly and adequately protect the interests of the Class Members. Attorneys for the Class Representatives are experienced and capable in the field of labor law and ERISA and have successfully litigated numerous LMRA and ERISA class actions involving retiree benefits of former union employees.

62. This action is properly maintained as a class action under FRCP 23(b)(1)(A). Because of the uniform standards of conduct imposed by ERISA, the prosecution of separate actions by individual members of the class would create a risk of inconsistent adjudications that would establish incompatible standards of conduct for Defendants.

63. This action is also properly maintained as a class action under Federal Rule of Civil Procedure 23(b)(2), in that Defendants have acted on grounds generally applicable to the class by unilaterally changing retiree health insurance they are obligated to provide to Class Members, thereby making final injunctive relief or corresponding declaratory relief appropriate with respect to the class as a whole.

64. Alternatively, this action is maintainable as a class action under FRCP Rule 23(b)(3), as the common questions of law and fact described above predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

## COUNT I

### Violation of Collective Bargaining Agreements, Actionable under LMRA § 301

### (Against Defendant ASARCO by All Plaintiffs)

65. Plaintiffs incorporate by reference all preceding allegations as though fully set forth here.

66. The collectively bargained agreements described above providing for Medicare-eligible retiree health care benefits are "contract[s] between an employer and a labor organization" within the meaning of LMRA § 301, 29 U.S.C. § 185. The contracts conferred upon all Class Members a vested right to certain Medicare-eligible retiree health care benefits for Class Members' lifetimes. By announcing its intention to unilaterally eliminate this coverage and replace it with a so-called "healthcare reimbursement arrangement," ASARCO has breached these contracts.

67. ASARCO's breach of its collectively bargained obligations is actionable under LMRA § 301, 29 U.S.C. § 185.

## COUNT II

### Violation of Employee Benefit Plan, Actionable under ERISA § 502(a)

### (Against all Defendants by Individual Plaintiffs Only)

68. Plaintiffs incorporate by reference all preceding allegations as though fully set forth here.

69. Defendants are obligated to provide retiree health care benefits pursuant to the terms of the **negotiated** governing ERISA documents. The collectively bargained agreements described above providing for Medicare-eligible retiree health care benefits throughout Class Members' lifetimes are "plan documents."

70. Defendants' repudiation of negotiated plan terms is actionable under ERISA §§ 502(a)(1)(B) and (a)(3), 29 U.S.C. §§ 1132(a)(1)(B) and (a)(3). These ERISA provisions allow a participant or beneficiary to bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan,

or to clarify his rights to future benefits under the terms of the plan," and further "to enjoin any act or practice which violates . . . the terms of the plan, or . . . to obtain other appropriate equitable relief . . . to redress such violations or . . . to enforce . . . the terms of the plan." Additionally, a participant suing under these provisions is entitled to interest on any retroactive amounts awarded.

## VI.  RELIEF REQUESTED

WHEREFORE, Plaintiffs respectfully request that this Court:

A.  Certify this action as a class action and appoint Gerald Barrett and Feinstein Doyle Payne & Kravec, LLC as counsel for the Class.

B.  Declare that the retiree health insurance provided by the collectively bargained agreements cannot be unilaterally terminated or modified by Defendants.

C.  Permanently enjoin Defendants from terminating or modifying the retiree health care benefits provided to Class Members under the collectively bargained agreements.

D.  As necessary, award to the Class Representatives and to Class Members retiree health care benefits pursuant to the terms of the collectively bargained agreements, and/or monetary damages or restitution or other monetary relief (plus interest), and/or other equitable relief such as reinstatement or reformation, as necessary, to restore them to the position in which they would have been but for Defendants' contractual violations.

E.  Award Plaintiffs their reasonable attorneys' fees and costs incurred in this action.

F.  Grant such further relief as may be deemed necessary and proper.

## VII.  JURY DEMAND

Plaintiffs request a jury trial of all issues so triable.

- 17 -

| | | |
|---|---|---|
| 1 | Dated:  October 25, 2018 | Respectfully submitted, |
| 2 | | s/ Gerald Barrett |
| | | Gerald Barrett, SBN 5855 |
| 3 | | WARD, KEENAN & BARRETT, P.C. |
| | | 2141 East Camelback Rd., Suite 100 |
| 4 | | Phoenix, Arizona  85016 |
| | | Telephone: (602) 279-1717 |
| 5 | | Facsimile: (602) 279-8908 |
| | | gbarrett@wardkeenanbarrett.com |
| 6 | | |
| | | FEINSTEIN DOYLE PAYNE |
| 7 | |      & KRAVEC, LLC |
| | | William T. Payne |
| 8 | | Pamina Ewing |
| | | Joel R. Hurt |
| 9 | | Ruairi McDonnell |
| | | 429 Fourth Avenue |
| 10 | | Law & Finance Building, Suite 1300 |
| | | Pittsburgh, Pennsylvania 15219 |
| 11 | | Telephone: (412) 281-8400 |
| | | Facsimile: (412) 281-1007 |
| 12 | | wpayne@fdpklaw.com |
| | | pewing@fdpklaw.com |
| 13 | | jhurt@fdpklaw.com |
| | | rmcdonnell@fdpklaw.com |
| 14 | | |
| | | *Attorneys for Plaintiffs* |
| 15 | | |
| | | David R. Jury, General Counsel |
| 16 | | Mariana Padias, Asst. General Counsel |
| | | Maneesh Sharma, Asst. General Counsel |
| 17 | | United Steelworkers |
| | | 60 Boulevard of the Allies, Room 807 |
| 18 | | Pittsburgh, Pennsylvania 15222 |
| | | Telephone: (412) 562-2549 |
| 19 | | Facsimile: (412) 562-2574 |
| | | djury@usw.org |
| 20 | | mpadias@usw.org |
| | | msharma@usw.org |
| 21 | | |
| | | *Attorneys for Plaintiff United Steelworkers* |
| 22 | | |
| 23 | | |
| 24 | | |
| 25 | | |
| 26 | | |
| 27 | | |
| 28 | | |